UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| MATTHEW DWIGHT THOMPSON, | ) | 6: 15-cv-01313-AA |
| Petitioner, | ) | |
| v. | ) | |
| JEFF PREMO, Superintendent, | ) | ORDER |
| Oregon State Penitentiary, | ) | |
| Respondent. | ) | |

AIKEN, District Judge.

In his brief on exhaustion and procedural default, respondent identified five claims as procedurally defaulted and thus not subject to federal habeas review: **First Claim** "Death Qualification" of Petitioner's Jurors was Unconstitutional; **Second Claim** Death-Qualification Voir Dire Violated the Prospective Jurors' Constitutional Rights and Trial Counsel was Ineffective in Failing to Object on this Ground; **Fourth Claim** The Trial Court Wrongly Discharged Prospective Jurors Nos. 4 and 79, and Trial Counsel Failed to Object to the Dismissal of these Life-Prone Jurors; **Sixteenth**

1 - ORDER

**Claim** Cruel and Unusual Punishment; and **Seventeenth Claim** Cumulative Impact of Errors.

While petitioner concedes that the aforementioned claims are procedurally defaulted, he maintains that in accordance with *Martinez v. Ryan*, 566 U.S. 1 (2012) he can show cause and prejudice sufficient to excuse their default based on his post-conviction ("PCR") counsel's failure to raise related and meritorious ineffective assistance of trial and appellate counsel claims.[1]

## I. Applicable Law on Procedural Default and the *Martinez* Exception

As a general matter, habeas review of a defaulted claim is barred unless a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Ordinarily, "cause" to excuse a default exists if a petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 753. In *Coleman*, the Court held that ineffective assistance of counsel in

---

[1] In his Reply [55], p. 5, petitioner stated that "respondent is correct that none of the issues it has identified have been presented to the highest level of the state court." However, in his Sur-reply [57], p. 1, he asserts for the first time that despite petitioner's failure to "fairly present" Claim One to the Oregon courts, the Oregon Supreme Court ruled on the merits of this federal claim and therefore there is no procedural default.

post-conviction proceedings does not establish cause for the procedural default of a claim. *Id.*

In *Martinez*, however, the Court established a "narrow exception" to the rule announced in *Coleman*:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17; *see also Trevino v. Thaler*, 133 S.Ct 1911, 1918 (2013) (noting that *Martinez* may apply to a procedurally defaulted trial-phase ineffective assistance of counsel claim if "the claim ... was a 'substantial' claim [and] the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding" (quoting *Martinez*, 566 U.S. at 17)).

The Ninth Circuit has held that to demonstrate cause and prejudice under *Martinez* sufficient to excuse the procedural default, a petitioner must make two showings. First, to establish cause, he must show that his PCR counsel was ineffective under *Strickland v. Washington,* 466 US. 668 (1984) which requires him to show that PCR counsel's performance was deficient and that there was a reasonable probability that, absent the deficient performance, the result of the PCR proceedings would have been different. *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014). Determining whether

3 - ORDER

there was a reasonable probability of a different outcome "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id.* at 377-78. Second, to establish prejudice, the petitioner must show that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

Under *Martinez*, a claim is substantial if it meets the standard for issuing a certificate of appealability. *Martinez*, 466 U.S. at 14 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). According to that standard, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Detrich v. Ryan*, 740 F.3d 1237, 145 (9th Cir. 2013) (quoting *Miller-El*, 537 U.S. at 336).

## II. Discussion

### A. First Claim: "Death Qualification" of Petitioner's Jurors was Unconstitutional

Petitioner alleges in his First Claim that the trial court's death qualification of jurors at his trial violated his constitutional rights. In his Petition [43], pp. 10-11, he specifically notes that his trial counsel "filed a motion to prohibit

death qualification of jurors," but that the trial court denied the motion. In subsequent briefing, however, petitioner suggests that trial counsel rendered constitutionally deficient performance when he failed to object based on federal law to the court's use of death qualification. To the extent that the Court would find that this claim is one of trial court error only, he seeks leave to amend his petition to add an ineffective assistance of trial counsel claim "challenging prior counsel's failure to properly present the [federal] claim." Sur-reply [57], p. 3.

Moreover, on this question of default, petitioner contends that despite his failure to fairly present this federal claim to the Oregon Supreme Court, that court denied it on the merits when it referenced its earlier decisions discussing related challenges, including federal challenges, to Oregon's death penalty scheme. He further maintains that there is no doubt as to how the Oregon Supreme Court, exercising its discretion to consider the federal claim, would have ruled. Accordingly, he maintains that where the Oregon Supreme Court ruled on the merits of the federal claim, despite his failure to properly present it to that court, there is no procedural default.

Alternatively, and with regard to his proposed ineffective assistance of trial counsel claim, petitioner argues that this underlying ineffective assistance claim is "substantial" for purposes of *Martinez* because the evidence he presents in the Petition

5 - ORDER

shows that death-qualified jurors are *significantly* more conviction-prone than non-death-qualified jurors and that in Oregon they are "organized to convict". *Cf. Lockhart v. McCree*, 476 U.S. 162 (1986)(Court relied on its refusal to find that the empirical evidence did anything more than establish that death qualification produced juries *somewhat* more conviction-prone than non-death-qualified juries).

First, I reject petitioner's contention that the Oregon Supreme Court resolved this federal claim on the merits.[2] I have carefully reviewed the record. In petitioner's automatic direct appeal he alleged:

> "Death qualification" is the procedure allowing the prosecution to challenge for cause jurors who oppose the death penalty. Death qualification results in the exclusion of jurors from the guilt phase of the trial who are objectionable to the state only because they will not vote to impose the death penalty. Comprehensive social scientific studies have demonstrated that a jury selected after such a process is substantially more conviction prone than juries in other cases. The studies also show that the selection process deprives a defendant of a jury chosen from a cross section of the community. **This procedure violates Article I, section 11 of the Oregon Constitution, because it denies a defendant an impartial jury drawn from a representative cross section of the community.**

DR 18-3, Ex. 259, p. 157 (emphasis added). In respondent's answering brief, he merely quoted petitioner's above arguments regarding death

---

[2] As noted above, petitioner's assertion contradicts his prior concession that this claim is procedurally defaulted.

qualification and cited to Oregon Supreme Court authority rejecting those arguments. DR 18-4, Ex. 269, p. 104. The parties agree that petitioner did not fairly present a *federal* death-qualification claim to the Oregon Supreme Court on direct review.

In denying relief on the death-qualification claim that petitioner *did* present, the Oregon Supreme Court held:

> Finally, defendant contends that the trial court erred in overruling his demurrer attacking the constitutionality of Oregon's death-penalty scheme. Defendant recognizes that his challenges to Oregon's death penalty have been rejected by this court in previous death penalty appeals. *See, e.g., State v. Guzek*, 310 Or 299, 797 P2d 1031 (1990); *State v. Montez*, 309 Or 564, 789 P2d 1352 (1990); *State v. Wagner*, 309 Or 5, 786 P2d 93 (1990). We decline to reconsider these issues. *See State v. Barone*, 328 Or 68, 98, 963 P2d 667 (1998)(declining to revisit issues previously decided); *State v. Hayward*, 327 Or 397, 414, 963 P2d 667 (1998)(same). We hold that the trial court did not err in overruling defendant's demurrer.

DR 18-4, Ex. 271, p. 37.

Petitioner is correct that fair presentation is not the only mode of establishing exhaustion of state remedies. Rather, where the state courts have reached and passed on the merits of a federal claim, regardless of whether the petitioner fairly presented it to them, state remedies are exhausted as to that claim. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989) ("[i]t is reasonable to infer an exception where the State has actually passed upon the claim."); *Greene v. Lambert*, 288 F.3d 1081, 1086 (9th Cir. 2002)("exhaustion does not require repeated assertions if a federal claim is actually

considered at least once on the merits by the highest state court");
*Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir. 1984)
("[t]here is no better evidence of exhaustion than a state court's
actual consideration of the relevant constitutional issue"); and
*Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir. 1990) (state
court's *sua sponte* consideration of an issue satisfies exhaustion).

Critically, however, the record here does not support a
contention that the Oregon Supreme Court ever ruled on the merits
of a federal death-qualification claim in this case. As noted above,
that court did not cite to a single federal case or federal
constitutional provision indicating it was addressing a federal
death-qualification claim. *Cf. Jones v. Dretke*, 375 F.3d 352, 355
(5th Cir. 2004) (state court specifically referenced the Sixth
Amendment and its bearing on jury selection and determined there was
no violation of that constitutional right); *Walton v. Caspari*, 916
F.2d 1352, 1356-57 (8th Cir. 1990) (citation to *Swain v. Alabama*,
380 U.S. 202 (1965), the landmark federal equal protection case on
peremptory challenges at the time); *Sandstrom*, 738 F.2d at 1206
(citation and reliance on *Mayberry v. Pennsylvania*, 400 U.S. 455
(1971), the leading case on disqualification of judges in contempt
proceedings, in deciding the claim). Petitioner's reliance on *Engle
v. Isaac*, 456 U.S. 107, 135 n.44 (1982) notwithstanding, the above
cases underscore the weakness in petitioner's argument that the

Oregon Supreme Court, merely by citing *Montez*, an Oregon case which in turn cited *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) and *Lockhart*, addressed his federal claim on the merits. I conclude that petitioner did not fairly present this federal claim to the Oregon courts and he cannot establish that the Oregon Supreme Court addressed it *sua sponte* on the merits. Accordingly, the claim is procedurally defaulted. As respondent correctly notes, *Martinez* cannot excuse the procedural default of either trial court error or ineffective assistance of appellate counsel claims. *See Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017) (*Martinez* does not apply to underlying claims of ineffective assistance of direct appeal counsel. It applies only to procedurally defaulted claims of ineffective assistance of trial counsel).

I turn next to petitioner's proposed ineffective assistance of trial counsel claim alleging counsel failed to raise and preserve a federal death-qualification claim. For the reasons that follow, I conclude that petitioner cannot show this claim is a "substantial" one pursuant to *Martinez*. Given *Lockhart* was *and is* established Supreme Court authority settling the constitutionality of death qualification, a fact that trial counsel specifically noted in his pretrial motion,[3] any claim that counsel rendered ineffective

---

[3] Trial counsel filed a pretrial motion objecting to the use of death qualification for jury selection on state law grounds and

assistance by relying on this authority or that petitioner suffered prejudice as a result has no merit. *See Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (counsel was not ineffective because a "lawyer cannot be required to anticipate our decision" in a later case); *Bullock v. Carver*, 297 F.3d 1036, 1052 (10th Cir. 2002) (rejecting ineffective assistance claim based upon counsel's failure to predict future changes in the law because "clairvoyance is not a required attribute of effective representation"). Petitioner points to no authority supporting the proposition that trial counsel renders ineffective assistance when he or she fails to anticipate a change in the law in the face of controlling, contrary Supreme Court precedent during the entire course of counsel's representation.

For these same reasons, petitioner cannot show that PCR counsel's representation was deficient when he failed to raise an ineffective assistance of trial counsel claim on these grounds. Accordingly, petitioner's request for leave to amend to add an ineffective assistance claim based on trial counsel's failure to

---

for reasons including that studies show that "death qualified" juries are substantially more conviction prone than juries generally and that death qualification results in a jury that is not a representative cross-section of the community. Counsel did concede, however, that pursuant to *Lockhart v. McCree*, 476 U.S. 162 (1986), death qualification did not violate the Sixth Amendment. DR 18-1, Exhibits 141-42. The trial court denied petitioner's challenge on the basis that his arguments had been settled under Oregon law by *Montez*, 309 Or. at 574-76 and *State v. Walton*, 311 Or. 223, 243 (1991).

raise and preserve a federal death-qualification claim is denied as futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (a court retains discretion to deny leave to amend in a habeas case based on futility of amendment alone).

**B.**    **Second Claim:   Death-Qualification Voir Dire Violated the Prospective Jurors' Constitutional Rights and Trial Counsel was Ineffective in Failing to Object on this Ground**

Petitioner concedes that this claim was not presented to the Oregon Supreme Court, but asserts that *Martinez* excuses the default of the ineffective assistance of trial counsel claim based on counsel's failure to object to the death qualification of prospective jurors Minty (12), Davis (79) and Ruth Papineau Williams (4)[4] as violating these jurors' rights to equal protection as set forth in *Powers v. Ohio*, 499 U.S. 400 (1991) and *Brown v. Allen*, 344 U.S. 443 (1953). Petitioner maintains that "[i]ssues involving the rights of jurors to serve are almost always substantial" and that given that these jurors were not likely to impose death, the consequences to him of their improper exclusion are grave. He contends that exclusion of these jurors amounts to structural error and requires the Court to set aside the penalty verdict. Moreover, he asserts that his PCR counsel rendered deficient and prejudicial performance when, without having obtained and reviewed available juror

---

[4]    There was another prospective juror named Ruth *May* Williams (59).

questionnaires, counsel raised no issues pertaining to jury selection during the PCR proceedings.

As a preliminary matter and as noted above, to the extent that this is a trial court error claim, *Martinez* cannot excuse its procedural default. *Davila*, 137 S. Ct. at 2063. Accordingly, I will focus on petitioner's allegations of ineffective assistance of counsel for failing to object to the death qualification of prospective jurors at petitioner's trial as violating their constitutionally protected right to equal protection. Specifically, I will address petitioner's argument that the right to sit on a capital jury implicates the jurors' equal protection rights and as such death qualification at the guilt phase in Oregon cannot survive either strict scrutiny or rational basis analysis.

For his part, respondent contends that petitioner offers little substantive analysis of either the performance or prejudice prong of *Strickland* with respect to his trial counsel's failure to raise the "novel claim that death-qualification voir dire is prohibited in a capital case because it violates the prospective jurors' right to equal protection under the federal constitution." Similarly, respondent argues that petitioner has presented virtually no analysis supporting his assertion that PCR counsel was constitutionally ineffective.

Critically, while it is clear that the Equal Protection Clause prohibits the use of peremptory challenges to excuse jurors on the basis of race, *see Batson v. Kentucky*, 476 U.S. 79 (1986) *holding modified* by *Powers*, and gender, *see J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 217, 130-31 (1994), and that these equal protection rights belong to the jurors themselves, no precedent exists extending these protections to non-death-qualified jurors so as to create a conflict with principles set out in Supreme Court cases affirming the constitutionality of death qualification. Indeed, it is perverse logic that would have this Court borrow the principle mandating that *qualified and unbiased* jurors not be excused from jury service based solely on their race or gender to protect jurors the trial court has affirmatively deemed *unqualified* to serve because they are unwilling and/or unable to follow the court's instructions and uphold their oaths as jurors to follow the law. *See Powers*, 499 U.S. at 409 ("We hold that the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race.").

Petitioner confines the arguments in his supporting briefs to a claim of ineffective assistance of counsel for not objecting to the death qualification of the aforementioned jurors on the basis it violated their right to equal protection vis-a-vis their

constitutional right to serve on a jury. In his Petition, he also suggests that death qualification violates jurors' rights to free exercise of religion, jurors' rights to participate in the Eighth Amendment question surrounding evolving standards of decency and his own right to an impartial jury. Briefly addressing petitioner's suggestion that death qualification compromises jurors' rights to freely practice their religion and a petitioner's right to an impartial jury, I note that the death-qualification process eliminates from the prospective juror pool only those persons who indicate that they are unable to render a verdict based on the evidence presented during trial and the court's instructions on the law. The Supreme Court has held "that a juror who in no case would vote for capital punishment, regardless of his or her instructions, is not an impartial juror and must be removed for cause." *Morgan v. Illinois*, 504 U.S. 719, 728 (1992). Death qualification, because it focuses on whether the jurors' views would prevent or substantially impair the performance of their duties as jurors in accordance with their instructions and oath, does not require the court or the parties to look to the sources of excluded jurors' beliefs, religious or otherwise. *See e.g., Ortiz v. Quarterman*, 504 F.3d 492, 500 (5th Cir. 2007), *cert denied*, 553 U.S. 1035 (2008) ("a veniremember may not be excluded from sitting on a capital jury merely because she voices general objection to the death penalty or

14 - ORDER

expresses conscientious or religious scruples against its infliction").

Finally, I reject petitioner's argument that these jurors are being denied their constitutional rights to equal protection because they are barred from weighing in on the question of evolving standards of decency under the Eighth Amendment. I am persuaded that while the exclusion of non-death-qualified jurors may affect the *weight* to be given to jury verdicts recommending death as an indicia of community standards, it is not alone a basis for finding that the process violates those jurors' equal protection rights or that the practice itself violates the Eighth Amendment. *See United States v. Sampson*, 2015 WL 7962394, *11 n.11 (D. Mass Dec. 2, 2015). In adopting this reasoning, I am cognizant that jurors who are personally opposed to the death penalty, regardless of reason, are permitted to serve on capital juries provided they are death qualified. In addition, non-death-qualified jurors have other avenues, such as voting, to weigh in on the Eighth Amendment community standards question. Ultimately, I conclude that when the Supreme Court affirmed the constitutionality of death qualification in *Lockhart*, it necessarily determined that barring non-death-qualified jurors from serving on capital case juries did not invoke, let alone violate, any constitutionally protected equal protection rights of such jurors.

For the reasons discussed above, I find no support for the proposition that death qualifying a jury for the guilt phase of a capital trial violates either the affected jurors' or the defendant's rights. As such, it would have been futile for petitioner's trial counsel to have challenged the death-qualification process on these grounds. *See James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) ("[C]ounsel's failure to make a futile motion does not constitute ineffective assistance of counsel."). Accordingly, petitioner cannot show either that PCR counsel's representation was deficient when he failed to raise an ineffective assistance of trial counsel claim on these grounds or that the underlying ineffective assistance of counsel claim was a "substantial" one under *Martinez*.

C. **Fourth Claim: The Trial Court Wrongly Discharged Prospective Jurors Nos. 4 and 79, and Trial Counsel Failed to Object to the Dismissal of these Life-Prone Jurors**

Petitioner contends that both trial counsel's failure to object to the dismissal of Jurors Nos. 4 and 79 and the State of Oregon's failure to make the juror questionnaires part of the appellate record excuse the default of this claim. Substantively, petitioner argues that *Gray v. Mississippi*, 481 U.S. 648, 668 (1987) establishes that the wrongful exclusion of these life-prone and death-qualified jurors is structural error that requires the automatic reversal of petitioner's death sentence. Accordingly, he maintains that trial counsel's failure to object to the removal of these jurors

constituted ineffective assistance of counsel. In addition, petitioner asserts that to the extent appellate counsel was at fault for failing to complete the record on appeal with the juror questionnaires which established that these jurors were death qualified, counsel rendered ineffective assistance of appellate counsel.

### 1.    Juror No. 4 (Ruth Papineau Williams)

Petitioner contends that Juror No. 4, Williams, was an ideal juror for him because while she was morally opposed to the death penalty, she indicated that she would follow the law as instructed, regardless of her beliefs. Petitioner acknowledges that during voir dire his counsel questioned Williams about a medical condition she disclosed in her juror questionnaire. Williams told counsel that the condition required her to lie down for 30 minutes every afternoon or early evening. Ultimately, and upon confirming with Williams that she needed to lie down for 30 minutes every afternoon, the trial court excused her for cause as follows:

> THE COURT:  I can barely -- and I may as well make the tough decision.  We just cannot guarantee that every afternoon you'll have that 30 minutes and I appreciate that you need the 30 minutes and if it were a matter of one day or maybe two days, I could tell you we could guarantee that to you, uh, but beyond that I cannot.  So I'm going to excuse you at this point.  Thank you.

Citing The Americans with Disabilities Act ("ADA"), petitioner faults trial counsel with failing to affirmatively explore accommodation for this juror and with failing to object to the trial court's failure to inquire further into this juror's "straightforward need" and to consider whether a piece of carpet could have been found to accommodate Williams and/or to consider whether she could have lain down during a lunch break or in the "early evening" making it possible for her to serve.

In addition, petitioner argues that because the wrongful discharge of Williams required automatic reversal of petitioner's death sentence and her juror questionnaire provided powerful evidence of her being an ideal juror, the State should have provided petitioner's appellate counsel with this questionnaire. Petitioner argues that whether appellate counsel was at fault for not requesting the questionnaires or the State was at fault for not providing them, the failure should not be attributed to petitioner and should not bar this Court's review of the merits of this claim.

### 2. **Juror No. 79 (Carol Davis)**

Petitioner contends that the trial court apparently dismissed Juror No. 79 for cause but that the lack of a complete and intelligible record makes it impossible to confirm. He notes that the record toward the end of jury selection reveals that Davis was previously excused. Petitioner maintains that there is "every indication" that

this death-qualified juror was improperly dismissed because of her
reluctance to impose death, and therefore, petitioner's death
sentence should be set aside. Petitioner further faults appellate
counsel with failing to obtain a complete record with the juror
questionnaires supporting a determination that Davis was death
qualified.

Finally, with regard to both jurors, petitioner asserts that
PCR counsel rendered deficient and prejudicial performance because,
without having obtained and reviewed available juror questionnaires
supporting this claim, counsel could not have made a viable tactical
decision to omit an ineffective assistance claim based on trial
counsel's failure to object to these structural errors.
Accordingly, petitioner contends *Martinez* excuses any default of
this claim.

Federal courts reviewing challenges to voir dire must defer to
the judgment of the trial court. The Supreme Court has stressed that
the process of jury selection falls "particularly within the province
of the trial judge." *Skilling v. United States*, 561 U.S. 358, 386
(2010) (citations and quotation omitted).

> Reviewing courts are properly resistant to
> second-guessing the trial judge's estimation of a juror's
> impartiality, for that judge's appraisal is ordinarily
> influenced by a host of factors impossible to capture fully
> in the record -- among them, the prospective juror's
> inflection, sincerity, demeanor, candor, body language,
> and apprehension of duty.

*Id.* (citing *Reynolds v. United States*, 98 U.S. 145, 156-57 (1879)). Even in death penalty cases, trial courts receive "special deference" because they actually observe jurors. *Patton v. Yount*, 467 U.S. 1025, 1038 (1984); *Wainwright v. Witt*, 469 U.S. 412, 426 (1985). Accordingly, the Court must give due weight to the trial court's judgment of each juror's qualification.

In *Gray*, the case petitioner relies on, the Supreme Court held that the exclusion of a juror in a capital case who expressed general reservations to capital punishment, but who could have followed the court's instructions and voted for the death penalty, *i.e.*, exclusion of a death-qualified juror, is reversible error not subject to harmless error analysis. 481 U.S. at 665. However, in *Ross v. Oklahoma*, 487 U.S. 81, 87-88 (1988), the Supreme Court "decline[d] to extend the rule of *Gray* beyond its context: the erroneous '*Witherspoon* exclusion' of a qualified juror in a capital case."[5] Instead, the Court held that so long as the jury that ultimately sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve an unbiased jury does not translate into a Sixth

---

[5]In *Witherspoon v. Illinois*, 391 U.S. 510, 521-23 (1968), the Supreme Court concluded that it was unconstitutional to exclude a prospective juror who expressed scruples against the death penalty but who could, nevertheless, be impartial. Notably, the defendant in *Ross* argued that the loss of a peremptory challenge in and of itself violated his constitutional right to an impartial jury.

Amendment violation. *Id.* at 88; *see also United States v. Martinez-Salazar*, 528 U.S. 304, 317 (2000) (when a defendant elects to use a peremptory challenge to cure an error and is ultimately convicted by an impartial jury, there has been no due process violation). Based on the foregoing, I conclude that because *Gray* applies only to erroneous *Witherspoon* exclusions, it is inapplicable to petitioner's claim regarding prospective Juror Williams. The record makes clear that the trial court excused her for cause based on her medical status and its determination that it could not guarantee her that she could lie down for thirty minutes every afternoon over the course of a lengthy death penalty trial. Ms. Williams' views on the death penalty played no role in her removal. Petitioner does not dispute that the jury ultimately impaneled in his case was impartial. Accordingly, his allegation of error with regard to prospective juror Williams does not implicate his constitutional right to a fair trial.

With regard to prospective juror Davis, I reject petitioner's arguments that either *Martinez* or the State's or appellate counsel's failure to make the juror questionnaires part of the record on appeal excuses his default of this claim.

First, there is an absence of any evidence in the record indicating that Davis was dismissed based on her death-penalty views. I recognize that portions of the transcript of voir dire, including

sections related to Davis[6], are unintelligible (likely due to the difficulty of transcribing the voir dire proceedings from a recording) and that a record of precisely why Davis was excused appears to be missing altogether. Nevertheless, petitioner points to no evidence, and I find none, supporting his assertion that the trial court excused Davis for cause based on her death penalty views. Indeed, there is no evidence that the prosecutor challenged Davis for cause at all. However, the record does show that the trial court: (1) excused prospective juror Lora Ann Minty (12) for cause *sua sponte* based on her death penalty views; and (2) denied the prosecutor's challenge for cause of prospective juror Linda Schmidt (5), which was based primarily on her death penalty views. Notably too, both Minty and Schmidt were in Davis' voir dire group. *See* Transcript of Proceedings, Part B, pp. & 137-38.

Second, my review of the available voir dire transcript reveals that the trial court understood the requirements of *Witherspoon* and was determined to apply the appropriate legal standard. For example, during voir dire, Minty and Schmidt indicated concern over imposing the death penalty and the trial court questioned them. In one exchange with Schmidt, the court stated:

---

[6] *See* Transcript of Proceedings, Part B, pp. 55-58 for pieces of voir dire questioning pertaining to Davis.

We were covering many questions but we were talking essentially about the application of the death penalty and the fact that if you're in disagreement with it that's acceptable in a juror as long as you're able to apply the law and the -- in talking about the application, I was pointing out that you can enforce or you can apply the law of the death penalty even if you find that there was aggravated murder that was an aggravated murder that was committed deliberately, without provocation, and merits a probability of future dangerousness. Then you have to make the decision of shall a death sentence by imposed? And I was saying the only restriction on that is that it can't just be an arbitrary whim on your part to we'll I'll flip a coin to decide whether it should [ ] be imposed or not. There has to be some reason for the mitigation and you can look at the evidence as carefully as you want. You can scrutinize it as thoroughly as you want, but if you don't -- if you've answered everything affirmatively and despite your scrutiny you can't find anything in this case to justify mitigation, then you can't mitigate the death sentence just because you are opposed to capital punishment. And there's a distinction there. The one is totally abstract. I'm opposed to the death penalty, so I'm going to vote against it. I'm going to mitigate it. The other is I'm opposed to the death penalty, but still I find something -- or still I'm able to find something other than my opposition to the death penalty that causes me to want to mitigate or causes me to mitigate the death sentence, but it could be just the opposite. You could be opposed to the death penalty and find nothing in the evidence that would cause you to mitigate and the only thing you could say is that [ ] I'm opposed to the death penalty but I see nothing here in anything that's been presented to me in this court room that I can point to as a ground to mitigate this sentence from death. And then you'd be required to return a [ ] death penalty verdict.

In the end, after much discussion and questioning, Minty stated

that she did not think she could follow the law. The trial court

excused her. And Schmidt, despite significant equivocation, stated

she could follow the law. As noted above, the trial court denied

the prosecution's for cause challenge to this juror. Accordingly, in the absence of any contrary evidence and even assuming Davis' representations during voir dire were consistent with those expressed in her juror questionnaire,[7] my review of the available transcript, including the trial court's treatment of Minty and Schmidt, persuades me that the trial court would not have excused Davis for cause based on her death penalty views.

In addition, as noted above, I owe the trial court's judgment of Davis' qualification to serve on the jury special deference. *See Woodford v. Viscotti*, 537 U.S. 19 (2002) (a "readiness to attribute error [to the state court] is inconsistent with the presumption that state courts know and follow the law.") (internal citations omitted). Accordingly, at a minimum, in the absence of any evidence indicating the trial court improperly excused Davis based on her death penalty views and with the contextual benefit of the trial court's understanding of relevant legal principles coupled with examples of how it approached the issue with other jurors, I conclude that petitioner's ineffective assistance of counsel claim is not a substantial one under *Martinez*.

---

[7] In her questionnaire, Davis said she did not believe in taking someone else's life, but could understand it in some cases. While she thought it was a really hard question, she indicated she would follow the law and would not vote against the death penalty because of her beliefs regardless of the evidence and instructions.

Finally, to the extent this claim involves allegations of either trial court or appellate counsel error, *Martinez* cannot excuse its procedural default. *Davila*, 137 S. Ct. at 2063. Also, because there is no evidence that the trial court excused either Williams or Davis based on their death penalty views, petitioner cannot demonstrate that either the state's or his appellate counsel's failure to make the juror questionnaires part of the record on appeal prevented petitioner from complying with any procedural rule in the presentation of this claim to the Oregon courts.

### D. Sixteenth Claim: Cruel and Unusual Punishment

Respondent argues that this claim is procedurally defaulted because petitioner failed to present each of its sub claims to the Oregon courts either on direct review or during his PCR proceedings. Petitioner maintains that these claims are not ripe for review, but that he presents them now to preserve them for consideration when and if an actual date for his execution is set.

I agree that these claims are not ripe for review. Accordingly, I deny this Claim without prejudice as premature.

### E. Seventeenth Claim: Cumulative Impact of Errors

Petitioner does not dispute respondent's contention that he failed to fairly present a cumulative error claim to the Oregon courts either on direct appeal or during his PCR proceedings. Nevertheless, he argues that this Court's refusal to consider this

claim on the merits merely because his direct appellate counsel failed to raise it in state court "would be a gross violation of a long line of authority, and of due process of law." Reply [57], p. 10.[8]

The Ninth Circuit has held that briefing a number of isolated errors that turn out to be insufficient to warrant reversal does not automatically require a habeas court to consider whether the cumulative effect of the alleged errors prejudiced the petitioner. *Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir. 2008). To the contrary, that court suggested that a cumulative error claim must be clearly identified in a petitioner's brief before a state court to be exhausted. *Id.* at 1026 (citing *Solis v. Garcia*, 219 F.3d 922, 930 (9th Cir. 2000), *cert. den.*, 534 U.S. 839 (2001)).

Petitioner failed to exhaust this cumulative error claim by presenting it to the state courts and he cannot now return to the state courts to properly exhaust this claim. *See Wooten*, 540 F.3d at 1025-26 (finding cumulative error claim procedurally defaulted because it was not presented to the highest state court on appeal). Accordingly, federal habeas review of this claim of cumulative trial

---

[8] I note that the "long line of authority" petitioner references in his brief is to the law surrounding the validity of cumulative error claims generally and not to authority supporting his suggestion that the Court should excuse the procedural default of this stand-alone cumulative error claim.

court error is procedurally barred and I deny it with prejudice on that basis. Moreover, as noted above, *Martinez* cannot excuse the procedural default of any related claim due to appellate counsel ineffectiveness.

## CONCLUSION

For these reasons, I resolve the issues pertaining to exhaustion and procedural default as follows:

1.  Petitioner has failed to establish that the following defaulted claims are substantial under *Martinez* or that he is otherwise entitled to have their default excused: Claims One, Two, Four and Seventeen. Accordingly, these defaulted claims are dismissed with prejudice.

2.  Claim Sixteen is not ripe for review. Accordingly, this claim is dismissed without prejudice as premature.

IT IS SO ORDERED.

DATED this 16th day of January, 2018.

Ann Aiken
United States District Judge